IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH D. FRIERSON,

        Plaintiff,

vs.                        Case No. 12-1429-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On June 13, 2011, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 9-19). Plaintiff alleges that he has been disabled since June 1, 2009 (R. at 9). Plaintiff is insured for disability insurance benefits through June 30, 2010

(R. at 11). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 11). At step two, the ALJ found that plaintiff has the following severe impairments: loss of vision in the left eye and depression (R. at 11). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining plaintiff's RFC (R. at 14), the ALJ determined at step four that plaintiff has no past relevant work (R. at 17). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 18). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18-19).

**III. Is the ALJ's finding that plaintiff's impairments did not meet or equal listed impairment 12.04 supported by substantial evidence?**

The ALJ found that plaintiff's mental impairments did not meet or equal listed impairment 12.04 (affective disorders).[2] The ALJ found that plaintiff's impairments did not meet either the "B" criteria or the "C" criteria of 12.04 (R. at 13-14). The "B" criteria of 12.04 are as follows:

> B. Resulting in at least two of the following:

---

[2] Listed impairment 12.04 is met when both the "A" and the "B" criteria are satisfied, **or** when the requirements of the "C" criteria are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2013 at 511-512, emphasis added).

5

> 1. Marked restriction of activities of daily
>    living; or
>
> 2. Marked difficulties in maintaining social
>    functioning; or
>
> 3. Marked difficulties in maintaining
>    concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each
>    of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2013 at 512). Plaintiff argues that the evidence establishes marked impairments in the first three categories (Doc. 12 at 23-28).

On June 29, 2010, Donald Ahrens, an advanced registered nurse practitioner (ARNP) performed a psychiatric evaluation and stated that plaintiff had a current GAF of 51 and a past year GAF of 55 (R. at 282-283). On July 1, 2010, Dr. Goodman performed a psychological evaluation and opined that plaintiff had a current GAF of 54 (R. at 299-302). These GAF scores indicate either moderate symptoms or moderate difficulty in social, occupational or school functioning.[3]

The record also includes a psychiatric review technique form dated September 3, 2010, and prepared by Dr. Stern based upon a review of the evidence, including the evidence set forth

---

[3] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

6

above (R. at 307-323). Dr. Stern opined that plaintiff only had a "moderate" degree of limitation in each of the first three categories of the "B" criteria (R. at 317, 319).

Plaintiff argues that the evidence establishes marked limitation in the three categories. The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court finds that the medical evidence set forth above provides sufficient evidence which a reasonable mind might accept as adequate to support a conclusion that plaintiff has less than marked limitations in the three categories; therefore plaintiff's impairment does not meet or equal listed impairment 12.04. The court will not reweigh the evidence.

**IV. Did the ALJ err by relying on the grids and not calling for vocational expert testimony?**

The ALJ found that plaintiff had the RFC to perform the full range of work at all exertional levels, but with the

7

following non-exertional limitations: plaintiff is able to perform work that does not require sharp, bilateral vision. He is limited to occupations requiring not more than occasional depth perception. Plaintiff is able to remember, follow, and carry out simple instructions, but would have difficulty with complex and some intermediate tasks. He is able to perform routine, low-complexity occupations. Plaintiff should avoid frequent interaction with the public (R. at 14).

At step five, the ALJ made the following findings:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. Social Security Ruling 85-15 (SSR 85-15) states that as a general rule, even if a person's visual impairment were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels. In the present case, the claimant's visual limitations are consistent with a finding that substantial jobs remain. Also, the claimant retains the ability to meet the basic mental demands of competitive, remunerative, unskilled work including: the ability to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and

>       usual work situations; and to deal with
>       changes in a routine work setting. (SSR 85-
>       15) Therefore, the unskilled job base is not
>       significantly eroded by the claimant's
>       nonexertional limitations.

(R. at 18).

At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. <u>Nielson</u>, 992 F.2d at 1120; <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993). To meet this burden, the Commissioner may rely on the Medical-Vocational Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2. <u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988). The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience. <u>Thompson</u>, 987 F.2d at 1487.

Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the defendant must generally utilize expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy. <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1491 (10th Cir. 1991). Resort to the grids is particularly inappropriate when evaluating nonexertional impairments. <u>Hargis</u>, 945 F.2d at 1490. However, vocational expert testimony is not always required when a claimant has exertional and nonexertional

impairments.  The mere presence of a nonexertional impairment does not preclude reliance on the grids.  The nonexertional impairment must interfere with the ability to work.  In summary, the grids should not be applied conclusively in a particular case unless the ALJ finds that: 1) the claimant has no significant nonexertional impairment, 2) the claimant can do the full range of work at some RFC level on a daily basis, and 3) the claimant can perform most of the jobs in that RFC level. Thompson v. Sullivan, 987 F. 2d 1482, 1488 (10th Cir. 1993).

The ALJ limited plaintiff to work that does not require sharp, bilateral vision, and requiring not more than occasional depth perception.  According to SSR 85-15:

> As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels.

SSR 85-15, 1985 WL 56857 at *8.

In the case before the court, the ALJ supported his reliance on the grids with a discussion of plaintiff's visual impairments and its effect on job performance based on SSR 85-15, which indicates that as long as plaintiff has sufficient visual acuity to handle and work with large objects, there is a

substantial number of jobs remaining across all exertional work levels. The court finds that the ALJ properly relied on 85-15 regarding the impact of plaintiff's visual impairments.

The ALJ also limited plaintiff to remembering, following and carrying out simple instructions, and performing routine, low-complexity occupations, while avoiding frequent interaction with the public (R. at 14). According to SSR 85-15:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base…
>
> Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.

SSR 85-15, 1985 WLL 56857 at *4.

The ALJ found that, even with his limitations, plaintiff retains the ability to meet the demands of competitive, remunerative, unskilled work because he can understand, carry

11

out and remember simple instructions, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting.  The court finds that plaintiff's limitations are not inconsistent with the demands of competitive, remunerative, unskilled work as defined in SSR 85-15; see Mitchell v. Astrue, 498 Fed. Appx. 757, 759-760 (10th Cir. Oct. 1, 2012).  Therefore, the court finds that substantial evidence supports the ALJ's finding that the unskilled job base is not significantly eroded by plaintiff's nonexertional limitations.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 27th day of February 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge